No. 742.

STATE EX REL. H. W. KNEELAND VS. THE CITY OF SHREVEPORT.

A mandamus will not lie to compel the mayor of a city to perform a duty which belongs solely to its common council.

The service of the writ of mandamus must be on the special officer, or officers of the municipal corporation, who are legally required to do the thing demanded.

APPEAL from the Tenth Judicial District Court, parish of Caddo. *Looney*, J.

*Land & Taylor*, for relator and appellee.

*T. Alexander*, City Attorney, for defendant.

The opinion of the court was delivered by

DEBLANC, J. On the twenty-first of August, 1872, plaintiff sold, to the city of Shreveport, three lots of ground, with the improvements thereon. That purchase was made under an ordinance adopted by the council and approved by the inhabitants of that city, at an election held to ascertain their will in regard to the intended acquisition. The price of that sale constitutes a debt, which, now, can not be successfully contested by the council. That is admitted.

As a corporation, that city is nearly insolvent. The assessed value of the property of its inhabitants is of a little more than two millions of dollars, its liabilities exceed two hundred thousand dollars. Including the interest on its outstanding bonds, the detailed estimate of its expenditures for 1877 is within a fraction of forty-seven thousand dollars. Exclusive of interest and costs, the judgments already rendered against it amount to more than fifty thousand dollars.

To its creditors and its inhabitants, the financial condition of Shreveport ought to be a just cause of anxiety and alarm, and they should have realized that there are circumstances and situations, in presence of which the law itself and the decrees of courts are powerless, and which they can not change. The debtors should not attempt to conceal to themselves the sacrifices, the losses, the troubles which a judgment may entail upon them; the creditors should not forget that many a writ has been returned unsatisfied, and lay in many a file, silent witness of a barren effort to recover a claim.

In this case, what is the parties' attitude? What is demanded and what denied? The creditor stands before us, with a judgment in his hand, and prays that a mandamus issue commanding the payment of that judgment. The debtor answers, I acknowledge your claim, but my treasury is empty, and, under the law, I can only impose and collect an amount of taxes indispensable to my existence as a corporation.

Under the judgment, the rights of plaintiff are fixed, irrevocable, undisputed. How shall his judgment be executed? How shall his rights

be enforced? So far as concerns the validity of the claim, it is evident we can not look behind the judgment; but, as it does not provide for its own execution, it is as evident, to supply that omission, we must refer to the parties' contract, to the ordinance which authorized that contract.

The ordinance which relates to the mode of payment of plaintiff's claim, is as follows:

"Be it further ordained that, in order to carry out the provisions of this ordinance, city bonds—*such as are authorized by the city charter*, be issued and negotiated for the purchase of said property.

"Be it further ordained that a tax for such amount as may be necessary, be levied annually, on all property of every kind in Shreveport, in order to pay the interest on said bonds, and to provide a sinking fund for their redemption."

By the charter, the common council was empowered to issue "bonds of the city, running forty years, with interest coupons attached, and bearing interest at the rate of, and not exceeeding ten per cent, etc." These are the bonds alluded to in the ordinance which authorized the purchase by the city of the lots of ground belonging to plaintiff. That ordinance and the section of the charter which empowered the council to issue the forty-years bonds, are inseparable from, and constitute an important part of the contract of the twenty-first of August, 1872.

Under that contract, how did the taxpayers of Shreveport bind themselves to pay to plaintiff the price of his property? By the negotiation and with the proceeds of the forty-years bonds. The price of the sale was six thousand dollars, one-half of which was paid by draft, on the day the act of sale was passed; the balance is represented by two notes of each fifteen hundred dollars, due one in sixty, the other in ninety days from their date, with interest. These terms do not appear to be those of the ordinance of the twenty-sixth of June, and, nevertheless, that ordinance is specially referred to in the act of sale, as the instrument from which the mayor derived the authority to represent the city in said act.

We entertain no doubt that plaintiff was aware of the nature and extent of the authority delegated under and by the ordinance, and he could not, legally, even with the consent of the mayor and council, have changed the mode of payment previously fixed between him and the taxpayers of Shreveport. The relator was to be paid with the proceeds of bonds, and as soon as those proceeds would be realized.

As then contemplated, have the bonds been issued? If they have, were they negotiated? If negotiated, what proceeds were realized and how were they applied? The time within which the price of the property was to be paid has certainly arrived, and it was for the city to show what became of the means provided for the payment of the stipulated

660          SUPREME COURT OF LOUISIANA,

State ex rel. Kneeland vs. City of Shreveport.

price. An appropriation was made to settle for the interest on bonds, but on what bonds ? We are left to infer. .

Defendant pleads that the relator's action is premature. that plea can not prevail. To sustain it, we would have to disregard the parties' intention, their contract, and the facts disclosed on the trial. At the date of the sale, neither the vendor nor the vendee's agent thought, and much less did they agree, that the payment of the price fixed between them, could have been postponed until 1877. In their estimation, the term of the promised payment was the space of time required to prepare and negotiate the bonds.

That term was fixed at ninety days from the date of the sale. That delay has long since expired. The draft representing the cash payment of three thousand dollars, acknowledged by plaintiff in the act of transfer, was protested and returned to him, and, of the price stipulated, he has received but the proceeds of the seizure and sale of his property. The balance he has demanded in vain. The sheriff's return on the last execution issued on Kneeland's judgment clearly indicates that another demand, another execution would be as barren, as useless as the first.

Is he entitled to the writ of mandamus ?

His counsel contends that, now, there is no limitation to the city's power of taxation to pay its debts; that the law of 1874 contained an express amendment of section eleven of the act of 1871, which fixed at one and three quarters per cent the rate of taxation in the city of Shreveport. That the law of 1874 was repealed by an act of 1876, and that, under the present legislation, the council can levy a tax equal to the indebtedness of the city.

The act of 1874 did not repeal the act of 1871. The sixteenth section of the first of said acts reads as follows: " And it is furthermore enacted that wherein any provision of section eight of act No. 98 of 1871, to the contrary notwithstanding, which is hereby repealed, so far as it may conflict with the provisions of this act." The seventeenth section provides " that all laws or parts of laws in conflict with this act be and the same are hereby repealed, so far as they are in conflict."

Section eight of the act of 1871 fixes the date when the administrators of the city departments shall make their report, what salary they shall receive, when their offices shall be opened for the transaction of business. Section thirteen of the act of 1874, far from repealing, re-affirms section eleven of the act of 1871, which limits the rate of taxation to one and three quarters per cent; it reads thus: " That the city council, after the adoption of the estimate *in accordance with section eleven of the act of* 1871, shall proceed to levy the annual tax, etc."

The fourteenth section of the act of 1874 declares not applicable to the city of Shreveport the general law of the State limiting the power of

taxation by towns, parishes and corporations. The main object of that law was to authorize and empower the council to levy an additional tax, for the purpose of defraying the police expenses of 1874; but it did not remove the limitation to the rate of taxation.

Plaintiff sold his property to the city of Shreveport, with the full knowledge that, under its charter, the rate of taxation which it could not exceed, was one dollar and seventy-five cents on every hundred dollars of the valuation of the property of its inhabitants. He knew that bonds were to be issued and negotiated to pay him, and should have foreseen that, if the bonds were not discounted, or their proceeds misapplied, his only recourse would be against that fraction of the tax levied at the aforesaid rate to pay the debts of the city.

He conceives that we may amend the judgment of the lower court and order the levy of a special tax to satisfy the whole of his claim. As against an ordinary debtor, and under a proper contract, his demand would not be extravagant or unjust; but, as against a corporation and under the express and tacit stipulations of his contract, that demand can not be allowed. The charter limitation is neither directly nor impliedly repealed by the special authority to buy for, and bind the municipality for the purchase price, unless the intention to ignore and exceed the limitation be clearly expressed in an ordinance, and that ordinance submitted to and ratified by the taxpayers.

In this case, the vendor was to be paid from the proceeds of bonds; but, as to the taxpayers, their obligation was that the bonds, from the negotiation of which the price of the sale was to come, would be redeemed and satisfied by them in but one way: by taxation, and under the limitation, then or to be hereafter fixed in and by the charter. That price, as to the vendor, was to be made in not more than ninety days; the term of the taxpayers' obligation was and remains the term stipulated for the redemption of their bonds.

Conceding, says defendant's counsel, that the city has not already exhausted its powers of taxation, then the issue is here directly presented and broadly made, that, there is no law of this State under which an ordinary judgment creditor of a municipal corporation can compel, by mandamus, or otherwise, the municipal authorities to levy and collect a special tax to pay his judgment.

Were it so, when positive law is silent, an appeal must be made to natural law and reason; but it is not so. "When the creditor's claim is reduced to judgment, the duty to provide for its payment becomes perfect, and if it can be paid in no other way, it must be done by the levy and collection of a tax for that purpose, and this duty will be enforced by mandamus." Dillon on Corp., p. 780, and note to p. 776; C. P. 830.

"The power of municipal corporations to make contracts and to create

liabilities has been already considered, and this authority imposes the duty of providing for the payment of those liabilities in the special mode prescribed by law; and if no such mode is prescribed, then by the levy and collection of taxes under the provisions of the charter or other legislative act. Whether the duty to provide for the payment of the liabilities of the corporation be specially enjoined, or whether it results from the general powers and nature of the corporation, it may, in all proper cases, be enforced by mandamus." Dillon on Corp., No. 685 and note.

Is this a proper case? It is, but not to the extent claimed by plaintiff. In the detailed estimate of the city's liabilities, his judgment is not included. In the detailed estimate of appropriations, the existence of his judgment is again and willfully omitted. This is wrong. His rights are fixed by a decree, and he should have been classed as one of the acknowledged creditors of the city. As such, he is entitled to and should be allowed a proportionate share in any and every surplus of funds which may remain in the treasury, after payment of the expenditures indispensable to the government of the city.

Plaintiff's remedy is by mandamus, but to whom should the writ be directed? Is it to the mayor? He has no power to levy or order the levy of any taxes; that power, by the charter, is vested in exclusively, the city council. The mayor alone is before us; not a member of the council has been cited. To grant the writ against the mayor, to command him to fulfill a duty not attached to his office, and expressly attached to the council's office, would be to command a violation of the law. Acts of 1871, p. 222, sections ten and eleven; R. C. C. 438; C. P. 119, 112.

In suits against the corporation of cities, the services of the citation must be made on the mayor, or any officer exercising similar functions; but the mandamus can be addressed to only those who have failed or refused to perform a duty, and who *alone can comply with the order of the court.* C. P. 834.

"If a joint act is to be performed by two or more, the writ must be directed to all." " In some cases, there is an option to direct the writ either to that part of the corporation which has the power to execute it, and on which alone that particular duty rests, or to the whole corporation by its corporate name or title.

" The writ, as we have seen, must be directed to those who are to execute it, or do the thing required, and it must be *delivered to, or served upon* those who are to make the return. Whether the writ be directed to the corporation or the council, the service ought to be made upon the officers who, under the law, have the power to do the act commanded, and against whom an attachment may issue to enforce obedience." Dillon on Corp., No. 699, 703, 704.

State ex rel. Kneeland vs. City of Shreveport.

Whatever may be the rights of the plaintiff, the parties against whom alone they may be exercised and enforced are not before us.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be and it is hereby annulled, avoided and reversed. It is further ordered, adjudged and decreed that plaintiff's action be and it is hereby dismissed as in case of nonsuit, and at his costs in both courts.

Rehearing refused.